# STATE OF NORTH CAROLINA

Case No. *18CVS972*

_____ IREDELL _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff**<br>Scott Carlton, Thomas Carlton, and wife, Cynthia Carlton | |
| **Address**<br>c/o L. Charles Grimes, Esq., 514 Williamson Rd Ste 421 | **CIVIL SUMMONS** |
| **City, State, Zip**<br>Mooresville, NC 28117 | ☐ **ALIAS AND PLURIES SUMMONS** |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| **Name Of Defendant(s)**<br>Capital Bank Corporation, f/k/a CommunityOne Bank, N.A. | **Date Original Summons Issued** |
| | **Date(s) Subsequent Summons(es) Issued** |

## To Each Of The Defendant(s) Named Below:

| **Name And Address Of Defendant 1** | **Name And Address Of Defendant 2** |
|---|---|
| Capital Bank Corporation f/k/a CommunityOne Bank, N.A.<br><br>c/o Registered Agent, Vincent Lichtenberger<br><br>4725 Piedmont Row Drive, Ste 110<br><br>Charlotte, NC 28210 | |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| **Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)**<br>L. Charles Grimes, Esq.<br><br>514 Williamson Rd. Ste 421<br><br>Mooresville, NC 28117 | **Date Issued**<br>4-20-18 | **Time**<br>4:31 | ☐ AM ☒ PM |
|---|---|---|---|
| | **Signature**<br>*Cyrit Hill* | | |
| | ☒ Deputy CSC | ☐ Assistant CSC | ☐ Clerk Of Superior Court |

| ☐ **ENDORSEMENT**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | **Date Of Endorsement** | **Time** | ☐ AM ☐ PM |
|---|---|---|---|
| | **Signature** | | |
| | ☐ Deputy CSC | ☐ Assistant CSC | ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

**EXHIBIT C**

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | Name Of Defendant |
|---|---|---|
| | ☐ AM  ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | Name Of Defendant |
|---|---|---|
| | ☐ AM  ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (Type Or Print) |
| Date Of Return | County Of Sheriff |

STATE OF NORTH CAROLINA

IREDELL COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 972

SCOTT CARLTON, THOMAS CARLTON )
and wife, CYNTHIA CARLTON, )
            )
    Plaintiffs, )
            )
v. )
            )
CAPITAL BANK CORPORATION f/k/a )
COMMUNITYONE BANK, N.A., )
            )
    Defendant. )
            )
            )

**COMPLAINT**

Plaintiffs Scott Carlton and Thomas Carlton and wife, Cynthia Carlton, complaining of

the acts of the Defendant Capital Bank Corporation f/k/a CommunityOne Bank, allege and state

upon their information and belief that:

## I. PARTIES AND SUMMARY OF THE CASE.

1.   Plaintiff Scott Carlton is a resident and citizen of Burke County, North Carolina.

2.   Plaintiffs Thomas Carlton and wife, Cynthia Carlton are residents and citizens of

Burke County, North Carolina.

3.   Defendant Capital Bank Corporation f/k/a CommunityOne Bank, N.A.

("CommunityOne" or "bank") is a national banking association having its principal place of

business in North Carolina. It is a bank that at earlier relevant times in this case was owned by

FNB United Corp., parent company of CommunityONE Bank, N.A., and in years 2007 through

2012 subject to the FNB Code of Ethics, among other applicable governing provisions, and

Federal and State law.

1

## II. SUMMARY OF EVENTS GIVING RISE TO CIVIL ACTION.

4.      Leading up to October 24, 2012, in a 1:00 pm meeting on that date, and by and through its later conduct, the Defendant Bank undertook to give advice as to the legal rights of Plaintiffs Thomas and Cynthia Carlton along with others present in such meeting, and acting through its agents directly and indirectly communicated to Plaintiffs that the Bank would work out its then present legal issues with Plaintiffs Thomas and Cynthia Carlton.

5.      On October 24, 2012 at that same meeting, the Defendant Bank in fact did work out its issues with these Plaintiffs, pending preparation of "paperwork," and encouraged and advised these Plaintiffs that they not hire legal counsel for any purposes, including in order to defend themselves in a separate then pending legal action in Iredell County Superior Court brought against them and others, designated as 12 CVS 1252.

6.      The reasons explained Plaintiffs Thomas and Cynthia Carlton, along with others present in such meeting on October 24, 2012 and later that there was no need to obtain independent legal counsel, included that it would be a "waste of money," was "unnecessary," and further, that in fact the Bank was providing them with an "advocate" to assist them in protecting their legal interests who had the ability and power to settle all claims with them at that meeting.

7.      The various verbal representations and the terms of such settlement reached, as further explained hereinbelow, was intended to convince these Plaintiffs not to activate their rights to independent legal counsel and defend that separate legal action set out in 12 CVS 1252.

8.      Five days later on October 29, 2012, the bank sought and obtained a default judgment against the Plaintiffs Thomas and Cynthia Carlton along with the others present at the earlier meeting on October 24, 2012.  When confronted with this event, the same bank officer

2

stated that this event was not important, could be ignored as a resolution was reached, and that she had the authority to assure this on behalf of the bank.

9. Still later into 2013 and subsequent years, after many delays, including due to the bank's agent being distracted by what she described as a very difficult and on-going audit, originally initiated by the U.S. Justice Department among other governing bodies, among related matters, the bank then began to reneged on what had been earlier agreed to and it did this through multiple steps as described below in detail.

10. Still later, the bank through its legal counsel sought to advantage itself at the injury of all of the Plaintiffs, due to their inaction and their having trusted and detrimentally relied upon the representations of the bank officers involved.

11. The Defendant Bank has now attempted to seize certain real property owned by Plaintiffs and their family company.

12. Plaintiff Thomas Carlton by and through his partners in a company named Automotive Collision Experts, LLC had a longstanding and trusting relationship with CommunityOne Bank, and particularly with the highest banking representative of CommunityOne in the area, Mr. Woodrow ("Woody") Washam, and this relationship was developed due to these partners having done many deals with Woody Washam at his various banking employers over a long period of time.

13. Particularly, Plaintiff Thomas Carlton's business partner, Steven McGlothlin had for a long period of time been engaged with Defendant in many business deals and had a personal relationship with many members of Defendant's staff including Defendant's chief banking officer in the area Woody Washam. Plaintiff Thomas Carlton was assured by Mr. McGlothlin's relationship, by his own long experience with Defendant and its representatives

3

and representations made by Defendant's representatives that a resolution to his debts with Defendant would be achieved.

14. Based upon a great deal of trust and confidence, that was not honored by the Defendant Bank, including its having ignored its own Code of Ethics and governing documents, the Plaintiffs have been variously injured as further described in this Complaint.

### III. DETAILED FACTUAL MATTERS AND EVENTS GIVING RISE TO THIS CIVIL ACTION.

#### A. History of Trust and Confidence Leading to Settlement Meeting.

15. Automotive Collision Experts, LLC, a business operated by Plaintiff Thomas Carlton and his two business partners, Charles Caputo and Steve McGlothlin was, around 2007, a successful automobile collision repair business and was expanding and developing land to establish new locations.

16. Local bank president Mr. Woody Washam expressed that he would like for CommunityOne to be involved in helping to finance that expansion.

17. On December 20, 2007 Defendant Thomas Carlton along with his business partners Charles Caputo and Steve McGlothlin entered into a Promissory Note secured by a Deed of Trust with Defendant CommunityOne Bank in the amount of $4,200,000.00 to develop a commercial building for Automotive Collision Experts, LLC.

18. Each of the partners' wives including Defendant Cynthia Carlton was also required to sign a guaranty securing the loan. That loan was modified in subsequent agreements in or around January, May and June of 2009.

19. Upon information and belief, no inquiry was made by Defendant CommunityOne Bank prior to the signing of these guaranties as to the independent financial ability of the

4

partners to guarantee the loan without their wives' signatures. Also upon information and belief, the wives were required to sign as a matter of course and the "way things were done" at the bank.

20. Plaintiff Thomas Carlton and his partners were in consistent talks with Defendant regarding the possibility of modifying the loan during the 2009-2010 timeframe and were current on payments under the then existing modification of the loan coming in to the middle of 2010.

21. In July of 2010 Woodrow Washam and other of the officers of CommunityOne advised Plaintiff Thomas Carlton and his business partners that if they wanted to soften the payment terms of the loan or seek lower payments, they would need to stop making payments on the loan for some period of time in order to qualify for these advantages.

22. On the advice of CommunityOne and its officers, including Woody Washam and Adam Stewart, Plaintiff Thomas Carlton and his partners stopped making payments on the loan.

23. Despite having been advised to stop making payments by CommunityOne itself, the Bank, in reaction to the stoppage of payments, soon later swept the accounts of Automotive Collision Experts and appropriated for itself over $500,000.00 from Automotive Collision Experts Money Market Funds Account(s).

24. Even after CommunityOne had seized their money, Mr. Washam continued to assure Thomas Carlton and his associates that CommunityOne would work with them and the matter would be resolved on fair terms that would allow them to recover and continue doing business as future bank customers.

25. The result of that appropriation was that Automotive Collision Experts was essentially forced to cease operations for a time and was made to default on its other debt obligations, among other resulting damages.

5

26. In May of 2012 CommunityOne sued Automotive Collision Experts and each of its owners and spouses, even as they were being told that CommunityOne would work this out with them.

27. In the latter part of 2012, CommunityOne Bank contacted Thomas Carlton and his partners and told them that the bank wanted to work with them to resolve the matter in a way that would allow them to attend to their financial needs, "feed their families," and continue operating.

28. At this time, the bank told Thomas Carlton and his partners that Ms. Tanji Bradley from CommunityOne's home office would be in touch. The Bank asked that the partners be patient as they tried to work out a suitable settlement.

29. Negotiations ensued. During the course of those negotiations Ms. Bradley represented to the partners that this issue would be resolved and that they did not need to file a response to the enforcement action in this case. Ms. Bradley continually assured the partners that she was their "advocate" with the Bank and would help them navigate through these difficulties so that they would remain good customers of the Bank after this matter was resolved.

30. Taking the representations of Ms. Bradley as true, Mr. Carlton and his partners had a series of conversations and meetings with Ms. Bradley in an attempt to resolve their differences with the Bank. She continued to assure the partners that she was their "advocate" with the Bank.

31. One meeting that punctuated the bank's position and made very clear various matters and terms of understanding and agreement, occurred on October 24, 2012 beginning at 1:00 pm. During that meeting, the Thomas Carlton and his partners discussed with Ms. Bradley the fact that they were considering their legal options and were not happy with the situation given that CommunityOne had swept their Money Market Account(s). However, they wanted to

6

understand what the bank was proposing and what could be worked out in direct communications.

32.     After Thomas Carlton and his partners voiced their strong feelings about the harm they had endured due to the seizure and taking of their company's Money Market Account(s), Ms. Bradley stated that she had the authority to resolve the matter.  She then asked if a payment of $75,000 "was doable" by Thomas Carlton and his partners as a full settlement payment in order for them to be released from their personal guaranties, along with their wives, and in order to settle the matter.

33.     At the time, and based upon the representations of Ms. Bradley that she was their "advocate" with the bank who was working on their "behalf," Mr. Carlton engaged in very open discussions with Ms. Bradley, and at that time he stated that he had been in detailed settlement discussions with a separate bank, Farmers and Merchants Bank, also known as "F&M Bank," on a very similarly sized loan on another real estate building development, and he explained that he was paying even more to settle.  In this regard, Thomas Carlton was revealing confidential information to Ms. Bradley, only after she had gained his trust and confidence as his "advocate" with the bank, and he explained the details of the F&M Bank loan and personal guaranty settlement amounts even though it meant he was offering more than Ms. Bradley had started the meeting with, that is her beginning request as to whether $75,000 split among the three partners was "doable."

34.     Mr. Carlton stated that the F&M Bank settlement was for a total of $50,000, by him paying $25,000.00 as a down payment, and $25,000.00 in payments over a period of time that he explained to Ms. Bradley.

7

35.     Ms. Bradley then offered that if Mr. Carlton would do that to resolve and settle the CommunityOne Bank issues, including his and his wife's personal guaranties, then Ms. Bradley would accept those settlement terms on behalf of CommunityOne Bank and she would then prepare paperwork memorializing that settlement.

36.     Thus, when leaving the meeting on October 24, 2012, Mr. Carlton as well as his partners understood that Mr. Carlton had settled with CommunityOne and that the matter would be resolved upon terms mirroring his resolution with F&M Bank. Ms. Bradley stated that this was a "done deal." Ms. Bradley also told Mr. Carlton and his partners that hiring an attorney in this matter would completely unnecessary and a full waste of money.

37.     Reasonably believing and trusting these statements of Ms. Bradley acting on behalf of the bank, as well as representations of others at the Bank who had developed a position of full trust and confidence, Thomas Carlton and his partners did not pursue a defense of the bank Defendant's ongoing civil action then pending in Iredell County Superior Court, designated 12 CVS 1252.

### B.     Delays and Events Leading Up to 2014.

38.     In order to finance Plaintiff Thomas Carlton's business and attempt to protect his remaining assets from further damage, his credit having been greatly harmed and later damaged by the actions of CommunityOne including its actions to sweep and seize the company's Money Market Account and its later placing a judgment upon his credit as above described, Thomas Carlton engaged in certain necessary private financing.

39.     This had been explained to Ms. Bradley on behalf of the bank.

8

40.     On October 11, 2012 Plaintiff Thomas Carlton required extra capital for certain operating costs and improvements and granted a Deed of Trust to a Mr. Brian Robinson securing a loan for $110,000.00.

41.     Despite the existence of what Mr. Carlton and all others present believed was a firm settlement, as earlier described, CommunityOne pursued and received a default judgment against Automotive Collision Experts, Mr. Carlton, Plaintiff Cynthia Carlton and Mr. Carlton's partners and their wives on October 29, 2012, just five days after agreeing to resolve the matter with Thomas and Cynthia Carlton on October 24, 2012.

42.     Even after the default judgment had been entered, Ms. Bradley continued to represent to Mr. Carlton that the default judgment was merely a formality and that paperwork for the settlement would be forthcoming, that he and his wife should not worry and that Ms. Tanji Bradley was his "advocate" in his on-going dealings with the Bank.

43.     As time passed Thomas Carlton continued to press Ms. Bradley for the final paperwork memorializing the settlement with CommunityOne. Ms. Bradley consistently made excuses as to why she had not been able to get the paperwork out to him, including that she was distracted by an ongoing audit under Federal Law that required a great deal of her time and energy.

44.     However, Ms. Bradley did offer ongoing advice to Thomas Carlton regarding how he should settle with other creditors and how he should best negotiate deals with them, including that he should claim greater percentages of ownership of assets commonly owned with his partners even after they were forced to enter into personal bankruptcy filings.

45.     After some time, Thomas Carlton's business partners, Mr. McGlothlin and Mr. Caputo made the decision to declare bankruptcy due at least in part to the actions of

9

CommunityOne Bank, including by the bank's sweeping the business's Money Market account(s).

46.     Ms. Bradley continued to advise Thomas Carlton that he should not seek bankruptcy, that CommunityOne would not harm he or his wife and that the settlement paperwork would be forthcoming.

47.     After some months of providing assurances that the settlement paperwork would be coming, and to the surprise and consternation of Thomas Carlton, Ms. Bradley not only offered advice on how to attempt to gain assets and strengthen his financial condition, she later also made a request to see Mr. Carlton's latest tax returns and updated financial paperwork from Thomas Carlton in order to offer further advice. These further delays were contrary to everything Thomas Carlton had understood as Ms. Bradley had represented up until that time, including that she had authority to settle Mr. Carlton's issues with the Bank, and that a settlement had been reached and should be considered "a done deal."

48.     As time drug on, Thomas Carlton's financial situation deteriorated and at a certain point he told Ms. Bradley that, if he was not soon able to settle the matter with CommunityOne he would have to borrow money from family members since CommunityOne had so damaged his credit that he was not able to borrow money from any other financial institutions.

       C.     *Financial Support Provided by Plaintiff Scott Carlton.*

49.     During the ongoing conversations, Ms. Bradley continued to urge Plaintiff Thomas Carlton to avoid bankruptcy and discussed with and advised Mr. Carlton that he should borrow money from his family if he could to pay off then existing secured creditors on his real property.

10

50.     Thomas Carlton operated a Limited Liability Company named Beeka, LLC for operating family rental properties. Though the taxes on the properties had been for many years reported as owned by, with the taxes paid by Beeka, LLC, the properties were left in the name of Thomas Carlton and his wife.

51.     Mr. Carlton had been advised by his CPA and insurer for some time to move those properties over into Beeka, LLC to be compliant with how the properties were listed in tax filings.

52.     Based on the advice of his CPA and insurer in April 2013 Thomas Carlton moved the property at 1429 Burkemont Avenue to Beeka, LLC to accurately reflect what had long been reported on tax filings and under insurance policy information.

53.     This property, at issue in the present CommunityOne Bank attempted judgment enforcement action, is a home where Plaintiff Thomas Carlton had spent many earlier years with his family.

54.     Plaintiff Scott Carlton, the brother of Thomas Carlton, joined Beeka, LLC on or around January 2, 2014 after beginning to loan the above described needed money.   In this process, Scott Carlton was provided with a 51% interest in the LLC, in part securing the money he had agreed to loan Thomas Carlton in order for Thomas Carlton to avoid bankruptcy.   These events were explained to Ms. Tanji Bradley, who advised the Thomas Carlton do all possible to avoid filing bankruptcy.

55.     Scott Carlton was informed by Thomas Carlton and was present to hear phone discussions where Ms. Bradley discussed on-going matters, including assurances to Thomas Carlton that the settlement with CommunityOne should be considered resolved and that she was still acting and advising Thomas Carlton.

11

56. Thomas Carlton informed Ms. Bradley that Scott Carlton was going to loan money to him, and she advised that it was a good idea to help him avoid bankruptcy and remain solvent and soon all this would be behind him.

57. Scott Carlton relied upon these assertions that were made, and that he in fact heard on certain occasions first hand as Ms. Bradley made them. He relied in fact to a strong degree and made loans, paid off other secured creditors, and engaged in other conduct upon these communications that now appear intended to induce Scott Carlton to loan the money for these purposes so that CommunityOne Bank would later be benefited.

58. As part of his commitment to provide capital, Scott Carlton agreed to pay off the first and second lenders on the real property.

59. On March 13, 2015 the property at 212 Old Salem Road was deeded to Beeka, LLC.

60. Ms. Bradley wanted to remain informed and continued to offer advice, including as to these loans, and she advised regarding Scott Carlton and his new position and that he pay off the loans and clear these secured liens from the property. She advised on these matters, and understood and approved of them. She was provided with details regarding the transactions as a part of her position as Thomas Carlton's "advocate" in the matter, who would help him get back on his feet and become a good future customer of the Bank.

61. Further, Scott Carlton was himself a long-time bank customer of nearly 20 years, first at the Bank of Granite which was later acquired by CommunityOne Bank. Based upon this long-standing relationship, and the words of Ms. Tanji Bradley, Scott Carlton placed a great deal of money into the series of secured loan payoffs as herein described.

12

62.     The payoffs on the loans were $59,800.00 to First Citizen's to release its lien on the property, and $110,000.00 paid to Brian Robinson on May 28, 2015 for the release of the remaining Deed of Trust on the property. Scott Carlton also loaned $60,000.00 for property repairs on Beeka's real estate.

63.     During the course of these transactions, Thomas Carlton was in constant contact with Ms. Bradley with the bank who continued to advise as to what he should do and how he should do it.

64.     During these times, Ms. Bradley and Thomas Carlton discussed Scott Carlton loaning money to Thomas Carlton to avoid bankruptcy, the moving of property into Beeka, LLC, and the payoff of the primary liens on the property at issue in this case among other communications.

65.     Ms. Bradley did this, all the while assuring Thomas Carlton that a settlement and resolution should be considered as "a done deal" on those terms earlier used for a full settlement with F&M Bank, with her soon finalizing the pending paperwork. Further, Ms. Bradley continued to discuss and maintain that there remained no reason to obtain legal counsel, for those same reasons she had continued to assert since October 2012.

66.     CommunityOne through its agents encouraged the investment of money and the clearing of liens on the property against which they now seek to collect through a judgment originally obtained upon those representations and assurances as above described in detail, thereby inducing Plaintiffs Thomas Carlton and Cynthia Carlton to sit on their rights, allow judgment to be obtained against them, and separately through still further representations caused Plaintiff Scott Carlton to invest large sums of money providing equity in real property, that CommunityOne Bank now seeks to wrongfully collect.

13

## FIRST CLAIM FOR RELIEF
### (Scott Carlton's Claim for Negligent Misrepresentation)

67.     Plaintiffs incorporate all prior paragraphs of this complaint as though fully set forth.

68.     Defendant Bank made various representations to Scott and Thomas Carlton as set forth above, including that the matter of Thomas and Cynthia Carlton's debts upon a personal guaranty with CommunityOne Bank had been settled, that it was correct and safe for Scott Carlton to provide financing and pay off other secured creditors and provide financing in order to Thomas Carlton to avoid having to file for bankruptcy.

69.     Defendant Bank intended that Plaintiffs would rely on those representations, and Scott Carlton was a recipient of such representations and did act upon them with placement of a very large amount of money.

70.     Those representations were false.

71.     Defendant Bank made those representations with knowledge of their falsity, or in the alternative under the requirement of alternative pleading, with a reckless disregard for their truth or falsity, and Defendant Bank and failed to use reasonable care or competence in obtaining and communicating the information.

72.     CommunityOne Bank on repeated occasions by and through Ms. Tanji Bradley made representations to Thomas Carlton, individually and before witnesses, including Mr. Charles Caputo and Mr. Steven McGlothlin, as well as in such manner as to be heard and relied upon by Plaintiff Scotty Carlton, that a settlement had been reached with regard to Thomas and Cynthia Carlton's personal guaranty debts with CommunityOne, that Ms. Bradley was an "advocate" with the bank for Thomas and Cynthia Carlton, and that other matters were true and correct as hereinabove alleged and set forth in detail.

14

73. Thomas Carlton, and also Scott Carlton, relied upon those representations, and Ms. Bradley knew that each was directly or indirectly within a group of persons who would rely upon such representations in making various financial decisions, including with the very large the loans to Thomas Carlton, and the payoff of other secured creditors who were ahead of CommunityOne Bank in terms of security.

74. Scott Carlton, along with all Plaintiffs, were damaged by their reliance on the representations, and all such damages were proximately caused by the acts of Defendant CommunityOne Bank.

75. Such damages, general and special, as further described below, were in excess of $10,000.00.

## SECOND CLAIM FOR RELIEF
### (Scott Carlton's Claim for Breach of Fiduciary Duty)

76. Plaintiffs incorporate all complaint paragraphs herein as though fully set forth.

77. A fiduciary duty requires the existence of a fiduciary relationship in North Carolina. In addition, to state a claim for breach of fiduciary duty, a plaintiff show that the fiduciary failed to "act in good faith and with due regard to plaintiff's interests."

78. The Defendant CommunityOne bank was a highly trusted entity, by and through its banking officers who were involved in the above stated transactions, and those who had originally developed a long history of trust and confidence with Plaintiff Scott Carlton.

79. The Defendant bank failed to act in good faith and with due regard to each of the Plaintiff's interests, in such ways as alleged in this Complaint, including in the following particulars.

15

80.     Scott Carlton had a relationship of long standing with CommunityOne Bank and through a long course of dealings with senior banking officials for CommunityOne Bank, and earlier when such bank was named Bank of Granite.

81.     Plaintiff Scott Carlton further understood that Plaintiff Thomas Carlton's business partners, and in particular, Steven McGlothlin had a strong and longstanding relationship with Defendant which had been developed over the course of many years providing him assurance that Defendant was acting in good faith and forthrightly in its dealings with Plaintiff Thomas Carlton.

82.     Scott Carlton when asked to provide his brother with capital, understood and heard himself that CommunityOne and in particular Tanji Bradley was Thomas Carlton's "advocate" with the Bank and that both the Bank and Ms. Bradley were interested in assisting, advising, and helping Thomas Carlton through this time of crisis and into financial viability.

83.     Indeed, Scott Carlton was aware of Tanji Bradley's integral role in advising Thomas Carlton in the resolution of his debts with all creditors.

84.     Mr. Carlton undertook appropriate investigation before making any loan to his brother, and in clearing all liens on the family property, and was assured based upon Ms. Bradley's various representations and assertions, and by hearing Ms. Bradley via telephone conversations with Thomas Carlton, that the settlement with CommunityOne was a "done deal," among various other assertions.

85.     Upon information and belief, the advice and assurances given by Ms. Bradley were made to provide benefit to the Bank by increasing their ability to collect against Tommy Carlton's assets and those which were loaned by Scott Carlton, and were without due regard to the duties undertaken by Ms. Bradley in establishing herself by multiple repeated assurances as

16

an advocate, advisor, and person offering various matters of legal advice, to Thomas Carlton, knowing full well that it would be heard by, reported to, and acted upon by Scott Carlton.

86. Where there is a violation of a fiduciary duty, there may also be a claim for Constructive Fraud in North Carolina.

87. Plaintiffs hereby allege that various acts engaged in by the Defendant amount to both a breach of fiduciary duty and separately constructive fraud, and such acts have damaged the Plaintiffs. Therefore, the Plaintiffs seek to recover for all of their damages.

88. All of these facts, and resulting damages, were known to Defendant, and as more fully herein described, due to such misconduct Scott Carlton and all of the Plaintiffs have been damaged.

89. Such damages, general and special, as further described below, were in excess of $10,000.00.

## THIRD CLAIM FOR RELIEF
### (Scott Carlton's Claim for Constructive Fraud)

90. Plaintiff incorporates all complaint paragraphs herein as though fully set forth.

91. Under law, a prima facie showing of constructive fraud requires plaintiff to prove that they and defendant were in a relationship of trust and confidence which led up to and surrounded the consummation of the transaction in which defendant took advantage of a position of trust to the hurt of plaintiffs.

92. The elements of a constructive fraud claim are proof of circumstances (1) which created the relation of trust and confidence, which is a fiduciary relationship, and (2) such relationship led up to and surrounded the consummation of the transaction in which defendant took advantage of his position of trust to the hurt of plaintiff.

17

93.     Defendant Bank was in the capacity of a fiduciary to the Plaintiffs. It is believed and alleged that the bank breached duties owed to Plaintiffs, and that the bank has taken advantage of this positions of trust to the hurt and damage of not only Scott Carlton, but of all the Plaintiffs.

94.     Such conduct and misconduct occurred in various ways, including those as herein set forth, and including but not limited to the following.

95.     At all times as Scott Carlton was contemplating providing monies to his brother, Thomas Carlton, Mr. Carlton was advised by Tanji Bradley that the CommunityOne matter had been settled on clear terms, and that the paperwork was merely a formality.

96.     Plaintiff Thomas Carlton discussed having his brother provide money to him several times with Ms. Bradley, and she encouraged Thomas Carlton to have his brother do so, all the while asserting that she was his "advocate" with the bank and that she was interested in helping him to remain solvent so that he would be a good customer of the Bank later on. Such advice included advice and counsel as to various legal matters.

97.     Scott Carlton knew of these representations and indeed, before he loaned any money to Thomas Carlton, investigated and saw, and heard with his own ears from Ms. Bradley via telephone, that the CommunityOne matter was settled and that clearing the liens on Thomas Carlton's property would be a help to him avoid bankruptcy as he came through the above described crisis.

98.     Ms. Bradley knew that Scott Carlton was relying upon her assertions and indeed, upon information and belief, made them at least in part to induce Scott Carlton to make the loans and for the benefit of the Bank in enhancing its ability to collect against the default judgment it had obtained.

18

99. All of these facts, and resulting damages, were known to Defendant, and due to such misconduct, Plaintiff has been damaged in an amount in excess of $10,000.00, in both special and general damages as further described below.

## FOURTH CLAIM FOR RELIEF
### (Scott Carlton's Claim for Fraud in the Inducement/Affirmative Misrepresentation)

100. Plaintiffs incorporate all complaint paragraphs herein as though fully set forth.

101. In North Carolina where one party has made a false representation or concealed a material fact which was reasonably calculated to deceive which was made with intent to deceive which does in fact deceive and results in damage to the party deceived, the wronged party has a right to be restored to the position they would have been in had the fraud not occurred.

102. Tanji Bradley represented to Thomas and Scott Carlton that the CommunityOne matter had been settled for $25,000.00 down and $25,000.00 to be paid over time.

103. She represented that she had authority to settle and indeed that the matter between Thomas Carlton and CommunityOne had been settled.

104. Further, Ms. Bradley was aware that Scott Carlton was lending money into the above described situation, and paying off other secured lenders, and that this was understandably contingent upon an understanding that settlement had been reached with the Defendant CommunityOne Bank, as Scott Carlton had CommunityOne Bank, through its employee Tanji Bradley, assert. And it was upon these various assertions that he was relying, including through phone conversations where Ms. Bradley made representations and offered on-going advice to Thomas Carlton, that assured Scott Carlton that a settlement had been effected and was "a done deal."

105. Scott Carlton loaned money and paid off secured lenders, as well as provided repair capital for necessary upkeep on property, based upon Ms. Bradley's assertions.

19

106. Those assertions were not true and were, upon information and belief, made in order to induce Scott Carlton to provide money and clear pre-existing liens from the property to allow CommunityOne to enforce its ill-gained judgment against that property.

107. CommunityOne now seeks to deprive Mr. Carlton of the money and resultant security, after having caused him to give it by their assurances.

108. All of these facts, and resulting damages, were known to Defendant, resulted in direct damage from the Defendant upon the Plaintiffs, and as more fully herein described, due to such misconduct Plaintiffs have been damaged, both generally and specially as further described below, in an amount in excess of $10,000.00.

### FIFTH CLAIM FOR RELIEF
### (Scott Carlton's Claim for Punitive Damages)

109. Plaintiff incorporates all complaint paragraphs herein as though fully set forth.

110. Plaintiffs Scott Carlton is entitled to compensatory damages from the Defendant resulting from each of the above claims, including constructive fraud, breach of fiduciary duty, willful and wanton conduct, and malicious activities and conduct, as well as pursuant to fraud and other harm as may be proven to have been committed by the Defendant CommunityOne Bank, acting by and through its employee and agent, Ms. Tanji Bradley.

111. Upon information and belief, the conduct of Defendant Bank as described herein was committed with malice and with the intent not only to deprive the Plaintiffs, including Scott Carlton, of an opportunity that would have allowed them to protect themselves, but it was also conduct intended to put them at extreme financial disadvantage.

112. Defendant's conduct was further willful and wanton and made with deliberate knowledge and intent to not only directly harm Plaintiffs, but also to deprive Plaintiffs the ability to seek to lessen their damages and mitigate their harsh circumstances in the above described

20

plan and scheme designed and orchestrated by Defendant Bank as described above in this Complaint.

113.  The above, and earlier described conduct of Defendant Bank subjects it to various forms of liability and damages, including punitive damages in excess of $10,000.00 along with other forms of recovery and multiple recoveries for such conduct and misconduct, as the finder of fact may determine.

**SIXTH CLAIM FOR RELIEF**
**(Scott Carlton's Claim for Unfair and Deceptive Trade Practices)**

114.  Plaintiff incorporates all complaint paragraphs herein as though fully set forth.

115.  Interactions between Plaintiffs and Defendant were at all times in or affecting commerce within the State of North Carolina.

116.  Defendant's above described conduct, incorporated herein as if fully set forth, was knowing conduct engaged in to obtain the benefit of Plaintiffs' land, newly placed capital and investments, along with their large monetary interest, all without the intent to allow Plaintiffs, including Scott Carlton, any hope of return of either the property, the equity in such property, or upon the above described large sums of capital placement.

117.  The above not only amounts to unfair or deceptive trade practice within the meaning of N.C. Gen. Stat. § 75, but is tantamount to fraud.

118.  Such actions have caused damage to the Plaintiff Scott Carlton in excess of $10,000.00, and all of the Plaintiffs are entitled to have their damages trebled and to recover attorneys' fees incurred in this action pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1, or to seek punitive damages for such conduct to the full extent allowed under North Carolina law.

## SEVENTH CLAIM FOR RELIEF
### (Scott Carlton's Claim for Unjust Enrichment/Constructive Trust)

119.    Plaintiff Scott Carlton incorporates all paragraphs of this Complaint herein as though fully set forth.

120.    Plaintiff Scott Carlton has conferred benefits in the payment of payments, fees and various other benefits upon Defendant CommunityOne, already paid, or that said defendant seeks through legal maneuvering to obtain, by virtue of his having trusted said Defendant, and his having been within that group of people, including the other Plaintiffs in this civil cause, who were known to the Defendant Bank to be reliant upon all such information being correct, truthful and trustworthy when communicated.

121.    This includes the clear representations made by Defendant CommunityOne as set forth above, that a settlement for $50,000.00 had been reached with Defendant CommunityOne, and therefore it was safe and proper for Plaintiff Scott Carlton to place the large sums of money forward to assist his brother in avoiding bankruptcy and other harsh financial damages.

122.    As a result of that and other conduct as described throughout this Complaint, CommunityOne has been and will continue to be unjustly enriched at the expense of Plaintiff Scott Carlton.

123.    Those benefits were not conferred gratuitously or as a result of the intermeddling of Plaintiff Scott Carlton but rather were a result of the direct intention of CommunityOne to gain such benefit.

124.    The benefits conferred are measureable both in dollar terms and in the value of the lien on land they retain as a result of their conduct.

125.    Plaintiff is entitled to a resulting and/or constructive trust or equitable lien on the subject real property.

## EIGHTH CLAIM FOR RELIEF
### (Thomas and Cynthia Carlton's Claim for Breach of Contract and Separately Breach of the Covenant of Good Faith and Fair Dealing)

126.  Plaintiffs incorporate complaint paragraphs herein as though fully set forth.

127.  The Defendant CommunityOne Bank breached its settlement contract with Mr. Carlton, and violated the covenant of good faith and fair dealing in North Carolina, when it refused to settle the debt obligations under a personal guaranty of Mr. Carlton under the terms and for the amount of payment to which they had agreed, even in the face of many months of assurances that Ms. Bradley had the authority to settle the matter, was their "advocate" in all such legal matters, and had settled the matter and that the settlement was a "done deal."

128.  The terms of such settlement and resolution have been described in detail earlier in this Complaint and will not be repeated verbatim herein but are fully incorporated herein for all purposes.

129.  In North Carolina our courts have made clear that in every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.

130.  The covenant of good faith and fair dealing was implied in the loan documents, modifications and all signed agreements with the Bank.

131.  The covenant of good faith and fair dealing was likewise implicit in the agreement between Thomas Carlton and Tanji Bradley to settle the debt obligations of Mr. Carlton for an amount and under terms that mirrored those by which Mr. Carlton had settled with F&M Bank.

132.  CommunityOne breached its settlement agreement with Thomas and Cynthia Carlton.  It also separately violated its obligations under the implied covenant of good faith and

23

fair dealing in earlier matters and events, including by having Plaintiff Thomas Carlton and his partners originally stop making loan payments, and then by sweeping their accounts without notice.

133.    Additionally a string of events, as earlier set forth above and fully incorporated herein, exhibit such sharp banking and business practices, as to amount to additional examples of breach of contract and breach of the covenants of good faith and fairly dealing in our state.

134.    Plaintiffs have been damaged by the conduct of Defendant in an amount in excess of $10,000.00, and such damages include both general damages and special damages, generally and proximately caused by the Defendant Bank, as more fully below described.

**NINTH CLAIM FOR RELIEF**
**(Thomas and Cynthia Carlton's Claim for Breach of Fiduciary Duty)**

135.    Plaintiffs incorporate all complaint paragraphs herein as though fully set forth.

136.    A fiduciary duty requires the existence of a fiduciary relationship in North Carolina. In addition, to state a claim for breach of fiduciary duty, a plaintiff must allege that the fiduciary failed to act in good faith and with due regard to plaintiff's interests.

137.    In such roles, the Defendant CommunityOne Bank failed to act in good faith and with due regard to each of the Plaintiff's interests, in such ways as alleged in this Complaint, including in the following particulars.

138.    Tanji Bradley as an employee and agent of CommunityOne assumed the role of legal advisor and "advocate" to Thomas Carlton and also to his business partners, as witnessed by each of them including at that earlier described meeting on October 24, 2012 at 1:00 pm.

139.    And by extension, such fiduciary undertaking as legal "advocate" was provided to Scott Carlton, not only by the assurances to the Carltons that Thomas Carlton's debts with CommunityOne Bank had been settled on terms which mirrored those which he had reached with

24

F&M Bank, but also by advising him in his negotiations with other lenders and regarding obtaining financing from Scott Carlton and others to stay solvent and avoid bankruptcy, among other various items of advice and counsel provided.

140.    Ms. Bradley consistently and repeatedly throughout the process of negotiation and consultation with Thomas Carlton assured him that settlement was achieved, that she had the authority to do this, that documents were coming, and that his settlement was "a done deal."

141.    Further, Ms. Bradley undertook to provide advice as to Mr. Carlton's settlement of the resolution of negotiations with other lenders, all of which had been originally brought about by CommunityOne's earlier actions of advising that payments not be made, and then its conduct later in sweeping Mr. Carlton's and his partner's money market accounts.

142.    Plaintiff Thomas Carlton was informed and was aware that his partners, including Steven McGlothlin, had a longstanding and deep relationship with Defendant and its representatives and had developed that longstanding relationship over time in the course of many years and deals and were personally close to members of Defendant's staff.

143.    Defendant Bank was in the capacity of a fiduciary to the Plaintiffs, including due to it having acted as an "advocate" for the Plaintiffs through its employment of a person who unknown to the Plaintiffs was an attorney at law licensed to practice law in North Carolina, such facts creating a presumptive fiduciary relationship between the parties to this litigation.

144.    Where there is a violation of a fiduciary duty, there may also be a claim for Constructive Fraud in North Carolina.

145.    Plaintiffs hereby allege that various acts engaged in by the Defendant Bank, including by and through its agent, Ms. Tanji Bradley, herself a licensed attorney in North Carolina, amount to constructive fraud, and have damaged the Plaintiffs.    Therefore, the

Plaintiffs seek to recover for all of their damages, including those general and special damages as more fully described below in this complaint.

146. All of these facts, and resulting damages, were known to Defendant, and as more fully herein described, due to such misconduct Plaintiffs have been damaged in an amount in excess of $10,000.00, and such damages include both general damages and special damages, generally and proximately caused by the Defendant Bank, as more fully below described.

**TENTH CLAIM FOR RELIEF**
**(Thomas and Cynthia Carlton's Claim for Constructive Fraud)**

147. Plaintiffs incorporate all complaint paragraphs herein as though fully set forth.

148. Under law, a prima facie showing of constructive fraud requires plaintiff to prove that they and defendant were in a relationship of trust and confidence which led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of it position of trust to the hurt of plaintiffs.

149. The elements of a constructive fraud claim are proof of circumstances (1) which created the relation of trust and confidence, which is a fiduciary relationship, and (2) such relationship led up to and surrounded the consummation of the transaction in which defendant took advantage of his position of trust to the hurt of plaintiff.

150. Defendant Bank was in the capacity of a fiduciary to the Plaintiffs, including due to it having acted as an "advocate" for the Plaintiffs through its employment of a person who unknown to the Plaintiffs was an attorney at law licensed to practice law in North Carolina. Such facts created a presumptive fiduciary relationship among the parties in this litigation.

151. It is believed and alleged that the Defendant therefore breached its duties owed to Plaintiffs, and has taken advantage of the position of trust, all to the hurt and damage of the Plaintiffs.

26

152.    Such conduct and misconduct occurred in various ways, including those as herein set forth, and including but not limited to the following.

153.    Thomas Carlton including by and through his partners had a relationship of long standing with CommunityOne Bank including with Woodrow Washam, the chief banking officer for CommunityOne in the area.

154.    Plaintiff Thomas Carlton was informed and was aware that his partners, including Steven McGlothlin, had a longstanding and deep relationship with Defendant and its representatives and had developed that longstanding relationship over time in the course of many years and deals and were personally close to members of Defendant's staff.

155.    When Tanji Bradley became involved, she undertook to provide continuous assurances that she was Mr. Carlton's "advocate with the Bank." Ms. Bradley further undertook on multiple occasions to advise Mr. Carlton regarding the settlement of his debts with other lenders and in securing financing from his family.

156.    Further, Ms. Bradley assured Mr. Carlton that she had authority to settle his debts with CommunityOne and that a settlement for $50,000.00 was a "done deal."

157.    By providing such assurances and advice, including advising Mr. Carlton to clear the liens from his property and secure financing from his brother, Scott Carlton, CommunityOne sought to benefit itself in ways including but not limited to clearing its path to additional assets to collect as in its ongoing enforcement action.

158.    All of these facts, and resulting damages, were known to Defendant, and as more fully herein described, due to such misconduct Plaintiffs have been damaged in an amount in excess of $10,000.00, and such damages include both general damages and special damages, generally and proximately caused by the Defendant Bank, as more fully below described.

27

## ELEVENTH CLAIM FOR RELIEF
### (Thomas and Cynthia Carlton's Claim for Fraud in the Inducement/Affirmative Misrepresentation)

159.    Plaintiffs incorporate all complaint paragraphs herein as though fully set forth.

160.    In North Carolina where one party has made a false representation or concealed a material fact which was reasonably calculated to deceive which was made with intent to deceive which does in fact deceive and results in damage to the party deceived, the wronged party has a right to be restored to the position they would have been in had the fraud not occurred.

161.    Tanji Bradley undertook to provide continuous assurances that she was Mr. Carlton's "advocate with the Bank." Further, Ms. Bradley assured Mr. Carlton that she had authority to settle his debts with CommunityOne and that a settlement for $50,000.00 was a "done deal."

162.    No such settlement was forthcoming and indeed Ms. Bradley, after having induced Scott Carlton to invest money in clearing the liens on Thomas Carlton's property, prevented Thomas Carlton from declaring bankruptcy, and in the initial instance, inducing Thomas Carlton and his partners to forego defense of the collection action against them, represented that she needed further documents to gain approval for the settlement.

163.    Upon information and belief, Ms. Bradley's representations regarding her authority to settle, and other assurances were calculated to lull Thomas Carlton to sit on his rights and to set him up so that a greater portion of his assets would available for collection by CommunityOne.

164.    All of these facts, and resulting damages, were known to Defendant, and as more fully herein described, due to such misconduct Plaintiffs have been damaged in an amount in

28

excess of $10,000.00, and such damages include both general damages and special damages, generally and proximately caused by the Defendant Bank, as more fully below described.

## TWELFTH CLAIM FOR RELIEF
**(Thomas and Cynthia Carlton's Claim for Negligent Misrepresentation)**

165.    Plaintiffs incorporate all prior paragraphs of this complaint as though fully set forth.

166.    CommunityOne through Tanji Bradley and others represented to Thomas Carlton that his debts with CommunityOne were settled and that he was merely awaiting the paperwork to memorialize what was a "done deal."

167.    No settlement paperwork with CommunityOne ever materialized, but more, Thomas Carlton was continuously advised by CommunityOne and Tanji Bradley that he should clear the liens on his property and that their primary interest was in seeing him come out of his then current difficulties to be able to feed his family and be a productive member of the community and good customer.

168.    Defendant Bank made those representations with reckless disregard for their truth or falsity and failed to use reasonable care or competence in obtaining and communicating the information.

169.    Thomas Carlton relied on those representations in doing all he did and further, CommunityOne knew or should have known that he was relying upon them as he was in constant communication with the Bank and informing them of his action sand was being advised to take many of the actions he did by CommunityOne.

170.    All of these facts, and resulting damages, were known to Defendant, and as more fully herein described, due to such misconduct Plaintiffs have been damaged in an amount in

29

excess of $10,000.00, and such damages include both general damages and special damages, generally and proximately caused by the Defendant Bank, as more fully below described.

## THIRTEENTH CLAIM FOR RELIEF
### (Thomas and Cynthia Carlton's Claim for Punitive Damages)

171.    Plaintiff incorporates all complaint paragraphs herein as though fully set forth.

172.    Plaintiffs Thomas and Cynthia Carlton are entitled to compensatory damages from the Defendant resulting from each of the above claims, including constructive fraud, breach of fiduciary duty, willful and wanton conduct, and malicious activities and conduct, as well as pursuant to fraud and other harm as may be proven to have been committed by the Defendant.

173.    Upon information and belief, the conduct of Defendant Bank as described herein was committed with malice and with the intent not only to deprive Plaintiffs Thomas and Cynthia Carlton of an opportunity that would have allowed them to protect themselves, and also conduct intended to put them at financial disadvantage.

174.    Defendant's conduct was further willful and wanton and made with deliberate knowledge and intent to not only directly harm Plaintiffs, but also to deprive Plaintiffs the ability to seek to lessen their damages and mitigate their harsh circumstances in the above described investment plan and scheme designed and orchestrated by Defendant Bank.

175.    The above, and earlier described conduct of Defendant Bank subjects it to various forms of liability and damages, including punitive damages in excess of $10,000.00 along with other forms of recovery and multiple recoveries for such conduct and misconduct, as the finder of fact may determine. All of these facts, and resulting damages, were known to Defendant, and as more fully herein described, due to such misconduct Plaintiffs have been damaged in an amount in excess of $10,000.00, and such damages include both general damages and special

damages, generally and proximately caused by the Defendant Bank, as more fully below described.

## FOURTEENTH CLAIM FOR RELIEF
### (Thomas and Cynthia Carlton's Claim for Unfair and Deceptive Trade Practices)

176.    Plaintiff incorporates all complaint paragraphs herein as though fully set forth.

177.    Interactions between Plaintiff and Defendant were at all times in or affecting commerce within the State of North Carolina.

178.    Defendant's above described conduct, incorporated herein as if fully set forth, was knowing conduct engaged in to obtain the benefit of Plaintiffs' land and monetary interest without the intent to allow Plaintiffs any hope of return and indeed to prevent them from moving to protect their rights in defense of the collections by the bank or by availing themselves of bankruptcy protection.

179.    The above not only amounts to unfair or deceptive trade practice within the meaning of N.C. Gen. Stat. § 75, but is tantamount to fraud.

180.    All of these facts, and resulting damages, were known to Defendant, and as more fully herein described, due to such misconduct Plaintiffs have been damaged in an amount in excess of $10,000.00, and such damages include both general damages and special damages, generally and proximately caused by the Defendant Bank, as more fully below described.

181.    Plaintiffs are entitled to have their damages trebled and to recover attorneys' fees incurred in this action pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1, or to seek punitive damages for such conduct to the full extent allowed under North Carolina law.

31

## FIFTEENTH CLAIM FOR RELIEF
### (Thomas and Cynthia Carlton's Claim for Unjust Enrichment/Constructive Trust)

182.    Plaintiffs Thomas Carlton and Cynthia Carlton incorporate all paragraphs of this Complaint herein as though fully set forth.

183.    Plaintiffs Thomas and Cynthia Carlton have conferred benefits in the payment of payments, fees and various other benefits upon Defendant CommunityOne by virtue of their having been advised by Defendant CommunityOne that a settlement for $50,000.00 had been reached with Defendant CommunityOne.  Further, they also have engaged in those matters as described by Plaintiff Scott Carlton hereinabove in his seeking damages and imposition of a constructive trust and recovery for unjust enrichment, and they have been similarly harmed, such that they incorporate those above allegations set forth by Scott Carlton herein for all purposes to the extent applicable to this present claim.

184.    As a result of the Defendant Bank's conduct as described throughout this Complaint, CommunityOne has been unjustly enriched at the expense of Plaintiffs Thomas and Cynthia Carlton.

185.    Those benefits were not conferred gratuitously or as a result of the intermeddling of Plaintiffs Thomas and Cynthia Carlton but rather were a result of the direct intention of CommunityOne to gain such benefit.

186.    The benefits conferred are measureable both in dollar terms and in the value of the lien on land they retain as a result of their conduct.

187.    Plaintiff is entitled to a resulting and/or constructive trust or equitable lien on the subject real property.

## SIXTEENTH CLAIM FOR RELIEF
### (Cynthia Carlton's Claim under the Equal Credit Opportunity Act, 15 U.S.C. 1691, and Regulation B)

188.    All above paragraphs within this Complaint are incorporated herein and fully realleged.

189.    If, as alleged in the Complaint, lawful personal guaranties were obtained from Plaintiff Cynthia Carlton, which is again denied, then any such guaranties were obtained in violation of the rule of law, specifically the Equal Credit Opportunity Act, 15 U.S.C. 1691, and Regulation B issued pursuant to the act by the Federal Reserve Board.

190.    CommunityOne Bank made, upon information and belief, a corporate decision to ignore its duties under Regulation B.

191.    The Equal Credit Opportunity Act (ECOA) specifically applies to the extension of business credit. See 15 U.S.C. § 1691(a); 12 C.F.R. § 202.2(g). The official commentary to the 1985 revisions to Regulation B of such Act provides that "a creditor may not take the business applicant's marital status into account, and may not request information about a married applicant's spouse except when the spouse has some connection with the business. A creditor must comply with the rules that prohibit requiring the spouse to guarantee the loan." Official Staff Commentary to the Revision of Regulation B to the Equal Credit Opportunity Act, 50 Fed. Reg. 48,018, 48,019 (November 20, 1985).

192.    Pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1085(7), 124 Stat. 1376, 2085 (2010), the ECOA now provides a five year statute of limitations for ECOA claims. Separately, no statute of limitations bars claims under the ECOA when such claims are brought defensively in response to an affirmative action by the creditor to collect on a debt, either direct or by guaranty.

33

193.    In order to comply with the provisions of the ECOA and Regulation B, a bank must make a determination that an applicant is not independently creditworthy before requiring the signature of others, including an applicant's spouse.

194.    "[I]f an individual applies for credit on behalf of a closely-held business and, in so doing, uses his or her own individual assets to secure this credit, then that individual is also an 'applicant' within the meaning" of the ECOA.

195.    It is alleged on information and belief, that prior to acquiring the guaranties of Plaintiff Cynthia Carlton and wives of Thomas Carlton's business partners who had no interest in the closely-held business of their husbands, CommunityOne made no determination of the independent creditworthiness of Automotive Collision Experts, LLC, Thomas Carlton or any of his business partners. The Bank instead expressed words, made gestures and took actions to the effect that the spousal guaranties were generally always required as a matter of course, and this has been seen in other transactions engaged in by the Bank.

196.    It is further so alleged that CommunityOne offered no explanation as to why Automotive Collision Experts, LLC, independently or together with Plaintiff Thomas Carlton and his business partners, were not independently creditworthy before requiring their wives to sign personal guaranties and related documents.

197.    A creditor may not take a business applicant's marital status into account, and may not request information about a married applicant's spouse except when the spouse has some connection with the business. In such events, a creditor must comply with the rules that prohibit requiring spouses to guarantee such loans.

198.    The ECOA explicitly authorizes aggrieved applicants to bring civil actions for actual damages, punitive damages, and attorneys' fees, among other damages. Further, Section

34

1691e(c) of the ECOA also provides that: Upon application by an aggrieved applicant, the appropriate United States district court or any other court of competent jurisdiction may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this Title.

199.     Plaintiff Cynthia Carlton asks for cancellation of all of her liability on the debt as to any and all personal guaranties or otherwise, all as a matter of law, or alternatively that she be allowed to prove actual damages in the amount of the guaranty, which would have the practical effect of eliminating the underlying debt under equitable theories, including recoupment, set off, and such other theories as the Court may devise and find applicable.

200.     At least one court sitting in North Carolina has found that if litigants situated as the Defendant wives successfully prove a violation of the ECOA then their guaranties may be cancelled or set aside, either as a matter of law or, as a practical matter, by awarding them recoupment in the amount of the guarantee. Nevertheless, the request of such relief within this Cause of Action if granted would not act in bar to the other claims for damages set forth elsewhere within this Counterclaim.

201.     It is therefore requested that the Court, inter alia, find that the CommunityOne Bank violated the ECOA and that it void the guaranties and all other related documents signed by Defendant Cynthia Carlton, including under the Court's power to grant equitable relief under the ECOA. Plaintiffs therefore humbly seek not only the cancellation of the guaranty and any other associated contracts or paperwork signed by Cynthia Carlton, but also all other relief as this Court deems just and proper, and as more fully set forth elsewhere within this Complaint.

202.     The various guaranty agreements from Cynthia Carlton were obtained, upon information and belief, out of a routine corporate practice of CommunityOne Bank known to or

35

which should have been known to Defendant CommunityOne to be in direct violation to Regulation B, issued pursuant to the Equal Credit Opportunity Act.

203.    Any guaranty agreement obtained by CommunityOne Bank and sought to be enforced against Plaintiff Cynthia Carlton was obtained in violation of law and void, and, upon information and belief, such was a knowing, conscious, and callous violation of law, and was a routine corporate practice of CommunityOne Bank.

204.    By reason of such egregious violation, Plaintiffs are entitled to recover not only statutory damages for each such violation, including actual damages, but also punitive damages, in excess of $10,000.00.

205.    The Plaintiffs are, further, entitled to an award of attorney's fees.

206.    Plaintiffs further submit that they are entitled to a judgment declaring that any guaranty agreements obtained by CommunityOne Bank from Plaintiffs Thomas Carlton and Cynthia Carlton was obtained in violation of law, and is illegal, invalid and unenforceable not only against Plaintiff Cynthia Carlton, but against all Plaintiffs.

## SEVENTEENTH CLAIM FOR RELIEF
### (Scott Carlton and Thomas and Cynthia Carlton's Claim for the Unauthorized Practice of Law)

207.    Plaintiffs incorporate all prior complaint paragraphs herein as though fully set forth.

208.    In North Carolina it is unlawful for any person, firm or corporation to provide legal services to any person unless specifically a member of the North Carolina State Bar.

209.    The practice of law is defined as including: assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion about the legal rights of any person, firm or corporation.

36

210.    Even a member of the North Carolina State Bar who is employed by a corporation may not give legal advice or provide legal services to those with whom they come in contact in their non-legal work for that company.

211.    Indeed, the Code of Ethics of FNB, the parent company of CommunityOne recognized the danger of its employees giving legal advice:

> "The Giving Advice to Customers. Unless your regular duties for FNB United specifically permit, you may not, as an FNB United employee, give legal, tax or investment advice to customers. A customer may ask you for your opinion regarding the legal implications of a proposed transaction. Only licensed attorneys have authority to give legal advice. You must exercise great care to ensure that nothing you say might be interpreted as legal advice. You also may not advise customers on matters concerning tax problems, tax return preparation or investment decisions."

212.    In this instance, CommunityOne, by and through its employee and agent Tanji Bradley, a lawyer, provided such advice to Thomas Carlton repeatedly throughout his interactions with her, even asserting repeatedly that she was his "advocate" with the Bank.

213.    Such advice included but was not limited to: advising Thomas Carlton not to pursue defense of the collections action begun by CommunityOne against him, assuring him that the settlement of CommunityOne's claims against him was a "done deal," and further advising that bankruptcy protection and the laws in that area were not worth activating, and as well that the hiring of legal counsel was unnecessary.

37

214.     That advice began even before the October 24, 2012 meeting in which Ms. Bradley assured Thomas Carlton that the settlement of his debt claims was settled and that Scott Carlton providing loans to Thomas Carlton to pay off the prior liens on the property was a good decision and best for Thomas Carlton.

215.     Pursuant to N.C. Gen. Stat. § 84-10.1 knowing violation of the provisions of Section 84 of the North Carolina General Statutes or aiding and abetting such unauthorized practice of law gives rise to a private right of action by any person damaged thereby.

216.     Plaintiffs Scott Carlton, Thomas Carlton and wife, Cynthia Carlton have been damaged in many ways by CommunityOne's unlawful provision of legal advice credit and its aiding and abetting that unauthorized practice for its benefit in terms of direct, consequential, incidental and foreseeable damages including but not limited to damage to Thomas Carlton's credit, the increased costs of defending this action, and the encumbrance of the assets and security taken by Scott Carlton for that money loaned to Thomas Carlton at CommunityOne's direction. Such damages are in an amount greater than $10,000.00.

## EIGHTEENTH COUNTERCLAIM FOR RELIEF
### (Lis Pendens)

217.     All above paragraphs within this Answer and Counterclaim are incorporated herein and fully realleged.

218.     Plaintiffs all hereby give notice that they have either contemporaneously with the filing this suit, or shortly intend to, file in the public records of Burke County and in all other suitable and lawful forums, a notice of Lis Pendens protecting their rights in all involved real property until the conclusion of this litigation.

## NINETEENTH COUNTERCLAIM FOR RELIEF
### (General and Special Damages as to All Plaintiffs)

219.    All above paragraphs within this Answer and Counterclaim are incorporated herein and fully realleged.

220.    The Plaintiffs have suffered general compensatory and also special damages as a result of the conduct and misconduct of the Defendant.

221.    The Plaintiffs have also suffered other damages, including direct and indirect special damages, including damages for extra payments, lost credit and ability to borrow and protect their businesses and other interests, lost of ability to find and borrow money in the standard course, lost investment opportunity, lost time from work, and related harm. These resultant, and "ripple effect" type damages, along with all other damages proximately or otherwise caused by the acts of the Defendant CommunityOne Bank, as more fully described in this pleading and as will be proven at trial, are hereby sought from the Defendant.

### Reservation of Right to Add Claims and Parties

Plaintiffs expressly reserve the right to pursue all remedies available at law or in equity, including as may be supported upon proof of the above allegations, and further reserve the right to add other parties to this action after suitable discovery, in order to allow justice to be done.

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.    That Plaintiffs recover judgment against Defendant upon each of the above stated claims and causes of action, in such amounts to the full extent as by law allowed, including upon all general and special damages to which they show themselves entitled.

2.    That Plaintiffs recover all allowable compensatory and other damages, including direct and indirect, general and special damages, and including damages for lost investment opportunity and related harm, and all other damages proximately or otherwise caused by the acts

of the Defendant CommunityOne Bank, as more fully described in this pleading and as will be proven at trial.

3.    That Plaintiffs recover the costs and expenses of this action from Defendant.

4.    That Plaintiffs recover treble damages and reasonable attorneys' fees and costs as provided by N.C. Gen. Stat. § 75-16.1 and punitive and other damages as may be available under this or all other applicable law.

5.    That the Court enter injunctive relief pursuant to N.C. Gen. Stat. § 1-485 enjoining sale of property secured by the Deed of Trust and other documents in this case.

6.    That Plaintiffs be granted trial by <u>JURY</u>, and such other and further relief at law and in equity as the Court may find Plaintiff entitled.

This the 20th day of April, 2018.

LAW OFFICE OF L. CHARLES GRIMES, PA

Ted Lewis Johnson,
Attorney at Law

BY:

L. Charles Grimes, Esq.
N.C. State Bar No. 16648
Attorney for Scott Carlton
P.O. Box 3911
Mooresville, NC 28117
(704) 360-2300

Ted Lewis Johnson, Esq.
N.C. State Bar No.39791
Attorney for Thomas Carlton and Cynthia Carlton
P.O. Box 5272
Greensboro, NC 27435
(336) 252-8596

40

# STATE OF NORTH CAROLINA

IREDELL _____ County

File No. 18CVS972

In The General Court Of Justice
☐ District  ☒ Superior Court Division

F I L E D

2018 APR 20 P 4: 31

IREDELL CO., C.S.C.

CH

| | |
|---|---|
| *Name And Address Of Plaintiff 1* <br> SCOTT CARLTON <br> c/o L. Charles Grimes, Esq. <br> 514 Williamson Rd., Ste 421 <br> Mooresville, NC 28117 | **GENERAL** <br> **CIVIL ACTION COVER SHEET** <br> ☒ INITIAL FILING   ☐ SUBSEQUENT FILING |

Rule 5(b), General Rules of Practice For Superior and District Courts

*Name And Address Of Plaintiff 2*
THOMAS CARLTON and wife, CYNTHIA CARLTON
c/o Ted Lewis Johnson
P.O. Box 5272
Greensboro, NC 27435

*Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)*
L. Charles Grimes, Esq.
514 Williamson Rd. Ste 421
Mooresville, NC 28117
*Continued on separate page

**VERSUS**

*Name Of Defendant 1*
CAPITAL BANK CORPORATION f/k/a COMMUNITYONE BAN
c/o Registered Agent, Vincent M. Lichtenberger
4725 Piedmont Row Drive, Ste 110
Charlotte, NC 28210

| Telephone No. 704-770-8052 | Cellular Telephone No. |
|---|---|
| NC Attorney Bar No. 16648 | Attorney E-Mail Address charles@lcglegal.com |

| Summons Submitted ☐ Yes ☐ No | ☒ Initial Appearance in Case | ☐ Change of Address |
|---|---|---|

*Name Of Defendant 2*

*Name Of Firm*
Law Office of L. Charles Grimes, PA

*FAX No.* 877-896-0716

*Counsel for*
☐ All Plaintiffs  ☐ All Defendants  ☒ Only *(list party(ies) represented)*

Scott Carlton

Summons Submitted ☐ Yes ☐ No

☒ Jury Demanded In Pleading
☐ Complex Litigation

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

## TYPE OF PLEADING

*(check all that apply)*

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) *(see Note)*
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNJF)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) *Assess Court Costs*
☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
☐ Dismiss (DISM) *Assess Court Costs*
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

*(check all that apply)*

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other *(specify and list each separately)*

NOTE: *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

AOC-CV-751, Rev. 1/14
© 2014 Administrative Office of the Courts

(Over)

- ☐ Administrative Appeal (ADMA)
- ☐ Appointment Of Receiver (APRC)
- ☐ Attachment/Garnishment (ATTC)
- ☐ Claim And Delivery (CLMD)
- ☐ Collection On Account (ACCT)
- ☐ Condemnation (CNDM)
- ☐ Contract (CNTR)
- ☐ Discovery Scheduling Order (DSCH)
- ☐ Injunction (INJU)

- ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- ☐ Medical Malpractice (MDML)
- ☐ Minor Settlement (MSTL)
- ☐ Money Owed (MNYO)
- ☐ Negligence - Motor Vehicle (MVNG)
- ☐ Negligence - Other (NEGO)
- ☐ Motor Vehicle Lien G.S. 44A (MVLN)
- ☐ Possession Of Personal Property (POPP)

- ☐ Product Liability (PROD)
- ☐ Real Property (RLPR)
- ☐ Specific Performance (SPPR)
- ☒ Other *(specify and list each separately)*
  Breach of Fiduciary Duty, Constructive Fraud, Negligent Misrepresentation

| Date | Signature Of Attorney/Party |
|---|---|
| April 20, 2018 | |

### FEES IN G.S. 7A-308 APPLY
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

### PRO HAC VICE FEES APPLY
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)   ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*