IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:18-CV-00083-KDB-DCK

| | |
|---|---|
| CYNTHIA CARLTON,<br>THOMAS CARLTON,<br>SCOTT CARLTON,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST TENNESSEE BANK<br>NATIONAL ASSOCIATION<br>AS SUCCESSOR BY MERGER TO<br>CAPITAL BANK CORPORATION AS<br>SUCCESSOR BY MERGER TO<br>COMMUNITYONE BANK, N.A.,<br><br>Defendant. | <u>ORDER</u> |

**THIS MATTER** is before the Court on Defendant First Tennessee Bank National Association's ("First Tennessee" or "Bank") Motion to Dismiss (Doc. No. 22). In this action, Plaintiffs allege that they were injured as a result of a breach of an agreement to settle a state court collection action between Plaintiffs and the Bank. Defendant moves to dismiss the Amended Complaint under Rule 12(b)(6) in its entirety. The Court has carefully considered the motion, the parties' related briefs, the Amended Complaint (Doc. No. 19), and all other relevant portions of the record. As more fully discussed below, the Court will **GRANT IN PART** and **DENY IN PART** the motion.

## I. PROCEDURAL HISTORY

Plaintiffs first filed this action in state court in April 2018. (Doc. No. 1, at 1). First Tennessee Bank National Association, successor by merger to Capital Bank Corporation ("Capital Bank"), successor by merger to CommunityOne Bank, N.A. ("CommunityOne"), then filed a "Notice of

Removal" (Doc. No. 1) with this Court on May 21, 2018.[1] First Tennessee filed a motion to dismiss the original Complaint on August 7, 2018. (Doc. No. 7). Rather than ruling on the initial motion to dismiss, the Court ordered Plaintiffs to file an amended complaint in compliance with the pleading requirements of the federal courts. (Doc. No. 15; Doc. No. 18). Plaintiffs filed their Amended Complaint on April 5, 2019. (Doc. No. 19). The Amended Complaint asserts a total of eleven (11) claims against the Bank, including claims for breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, unjust enrichment/constructive fraud, breach of contract and breach of the covenant of good faith and fair dealing, fraud in the inducement/affirmative misrepresentation, and negligent misrepresentation. The Bank filed this motion to dismiss the Amended Complaint on May 10, 2019. (Doc. No. 22).

## II. RELEVANT BACKGROUND

For purposes of this motion, the Court accepts as true all well-pled facts and draws all reasonable inferences in Plaintiffs' favor. Plaintiff Thomas Carlton ("Thomas") and his business partners, Charles Caputo ("Caputo") and Steve McGlothlin ("McGlothlin"), were owners of Automotive Collision Experts, LLC ("ACE"). (Doc. No. 19: Amended Complaint, at ¶ 25). On December 20, 2007, CommunityOne made a $4,200,000.00 commercial loan to ACE. *Id.* Thomas and his wife, Plaintiff Cynthia Carlton ("Cynthia"), as well as Caputo, McGlothlin, and their spouses signed personal guaranties securing the loan. *Id.* at ¶¶ 26-27. Thomas and his partners were in "consistent talks with CommunityOne regarding the possibility of modifying the loan during the 2009-2010 timeframe and were current on payments under the then existing modification of the loan coming in to the middle of 2010." *Id.* at ¶ 28. Plaintiffs claim that in July

---

[1] First Tennessee and its predecessors will be referred to herein by their individual names or simply as "the Bank."

2010, local bank President Woodrow Washburn, along with other bank officers, told Thomas and his partners that "if they wanted to soften the payment terms of the loan or seek lower payments, they would need to stop making payments." *Id.* at ¶ 29. Consequently, Thomas and his partners quit making payments on the loan. *Id.* at ¶ 3.

Soon after Thomas and his partners stopped making payments, CommunityOne allegedly "swept the accounts" of the business and "appropriated for itself over $500,000.00" from those accounts. *Id.* at ¶ 31. However, it "continued to assure Thomas Carlton and his associates that CommunityOne would work with them and the matter would be resolved on fair terms that would allow them to recover and continue doing business as future bank customers." *Id.* at ¶ 32.

In May 2012, CommunityOne sued ACE and the guarantors on the loan. *Id.* at 34. It told Thomas and his partners that Tanji Bradley would be in touch with them to discuss a resolution in the case. *Id.* at ¶ 36. Bradley is a licensed attorney in the state of North Carolina, although none of the Plaintiffs were aware of this at the time. *Id.* at ¶ 141. Bradley met with Thomas and his partners on October 24, 2012, to discuss a possible settlement agreement in the collection action. *Id.* at ¶ 39. Plaintiffs allege that during this conversation, Bradley told them that she was their "advocate" with CommunityOne and had authority to resolve the matter. *Id.* at ¶¶ 40-41. She also allegedly told Thomas that if he would pay a settlement total of $50,000, then she would accept those settlement terms on behalf of CommunityOne and would prepare paperwork memorializing the settlement. *Id.* at ¶¶ 44-46. Plaintiffs further contend that Bradley told Thomas that hiring an attorney was "completely unnecessary and a waste of money." *Id.* at ¶ 47.

Thomas left the meeting believing that he had reached an oral agreement with CommunityOne to resolve the pending action and did not defend against it. *Id.* at ¶ 46. Five days after the October meeting, CommunityOne obtained a default judgment against Thomas, Cynthia, and the other

guarantors on the loan. *Id.* at ¶ 52. After the default judgment was entered, Bradley allegedly told Thomas she had not finished the settlement paperwork due to an audit at CommunityOne. *Id.* at 54. She assured him that the default judgment was "merely a formality" and that paperwork for the settlement would be forthcoming. *Id.* She also reminded Thomas that she was his and his wife's "advocate," counseled him not to pursue bankruptcy, and advised him on how he should settle with other creditors. *Id.* at ¶¶ 53-57. Sometime in the months following, Bradley also allegedly offered Thomas advice on how to increase his financial assets and requested to see tax-returns and other financial paperwork "in order to have [the Bank] approve what Ms. Bradley represented had been and what [Thomas] . . . believed was already done." *Id.* at ¶ 58.

Thomas and Cynthia's financial situation allegedly deteriorated due in large part to the Bank's actions in sweeping his accounts and obtaining a default judgment against him. *Id.* at ¶ 60. Bradley told Thomas that "if he was not soon able to settle the matter with [the Bank] he would have to borrow money from family members since [the Bank] had so damaged his credit that he was not able to borrow money from any other financial institution." *Id.* at ¶ 61. Accordingly, Thomas turned to his brother Scott Carlton ("Scott") to help him with his financial troubles. *Id.* at ¶¶ 62-67.

Thomas operated a limited liability company named Beeka, LLC ("Beeka") for the purpose of managing family rental properties. *Id.* at ¶ 63. Some of the properties were owned by Thomas and Cynthia, but the taxes were paid by Beeka. *Id.* Based on the advice of his CPA and insurer, Thomas moved two properties over to Beeka "to accurately reflect what had long been reported on tax filings and under insurance policy information." *Id.* at ¶ 65, 74. Scott was given a 51% interest in Beeka in part to secure money loaned to Thomas. *Id.* at ¶ 67. Scott was also a 20-year customer of

Bank of Granite, which was acquired by CommunityOne, and claims he had an extremely close business and personal relationship with some of the individual bankers. *Id.* at ¶ 17.

Scott does not allege that he was a party to the ACE loan, the collection action by the Bank, or the default judgment. However, Scott does claim that he overheard telephone conversations between Thomas and Bradley regarding a settlement between his brother and CommunityOne. *Id.* at ¶ 68. Based on his own independent customer relationship with CommunityOne, the conversations he overheard between Bradley and Thomas and conversations he had with Thomas, Scott paid off the senior lenders on one of the Beeka properties in 2015, thereby "inadvertently securing the Bank's position as a creditor against the property." *Id.* at ¶ 73. He paid $59,800.00 to First Citizen's to release its lien on the property in February 2015, and $110,000 to another creditor on May 28, 2015, which released the remaining Deed of Trust on the property. *Id.* at ¶ 78. Scott also loaned $60,000.00 for property repairs on Beeka's real estate. *Id.*

Plaintiffs allege the Bank, "through its agents, encouraged the investment of money and the clearing of liens on the property. . . [and induced] Plaintiffs Thomas Carlton and Cynthia Carlton to sit on their rights, allow judgment to be obtained against them, and separately through still further representations caused Plaintiff Scott Carlton to invest large sums of money providing equity in real property, that CommunityOne Bank now seeks to wrongfully collect." *Id.* at ¶ 81.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2006); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland,* 566 U.S. 30 (2012). In

evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Ordinarily, a plaintiff need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, with respect to claims of fraud, Rule 9(b) creates an exception to this liberal pleading standard and requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This heightened pleading requirement serves to protect defendants' reputations from baseless accusations, eliminate meritless suits brought only to extract a settlement, discourage fishing expeditions, and provide defendants with enough information about a plaintiff's allegations to mount a defense." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 546 (4th Cir. 2017) (citing *Pub. Emps.' Pub. Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009)).

## IV. DISCUSSION

This case has been brought under the Court's "diversity jurisdiction," 28 U.S.C. § 1332. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties agree that North Carolina law controls Plaintiffs' substantive claims.

**A. Breach of Fiduciary Duty and Constructive Fraud Claims**

Thomas, Cynthia, and Scott each allege breach of fiduciary duty (claims 1 and 6) and constructive fraud (claims 2 and 7) against the Bank. To establish a claim for breach of fiduciary duty, a plaintiff must show (1) that the defendant owed them a fiduciary duty, (2) that the defendant violated a fiduciary duty of care, and (3) that the breach of fiduciary duty was the proximate cause of the plaintiffs' injuries. *French Broad Place, LLC v. Asheville Sav. Bank, S.S.B.*, 816 S.E.2d 886, 899 (N.C. Ct. App. 2018). Generally, North Carolina recognizes two types of fiduciary relationships: "(1) those that arise from legal relations such as attorney and client, broker and client, principal and agent, trustee and *cestui que* trust, and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other." *Smith v. GMAC Mortg. Corp.*, No. 5:06CV125-V, 2007 U.S. Dist. LEXIS 66001, at *13 (W.D.N.C. Sept. 5, 2007) (quoting *Rhone-Poulenc Argo S.A. v. Monsato Co.*, 73 F. Supp. 2d 540, 546 (M.D.N.C. 1999)).

"Ordinarily borrower-lender transactions . . . are considered arm's length and do not typically give rise to fiduciary duties. In other words, the law does not typically impose upon lenders a duty to put borrowers' interests ahead of their own." *Dallaire v. Bank of Am., N.A.*, 760 S.E.2d 263, 266-67 (N.C. Ct. App. 2014); *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 781 S.E.2d 1, 8 (N.C. 2015). "To establish a fiduciary relationship in the creditor-debtor context, there must [be] some additional fact which tends to elevate the relationship above that of a typical debtor and creditor." *French Broad Place, LLC*, 816 S.E.2d at 899 (alteration in original) (internal quotation

7

marks omitted). "[T]hus, even when parties to an arms-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other." *S. Atl. P'ship of Tenn. v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002).

To establish a claim for constructive fraud, "[i]t is necessary for plaintiff to allege facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Terry v. Terry*, 273 S.E.2d 674, 677 (N.C. 1981) (alteration in original). "Essentially, the primary difference between a claim for constructive fraud and one for breach of fiduciary duty is that constructive fraud requires showing that the defendant benefited himself through his breach of fiduciary duty." *BDM Invs. v. Lenhil, Inc.*, 2014 N.C.B.C. 6 (N.C. Super. Ct. 2014) (citing *White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 156 (N.C. Ct. App. 2004)).

The Bank argues that all four claims must be dismissed because Plaintiffs cannot show the existence of a relationship of trust and confidence. For Thomas and Cynthia's claim, the Bank contends that the allegations in the Amended Complaint describe nothing more than an ordinary lender-borrower relationship and do not rise to the level of a fiduciary relationship. (Doc. No. 23, at 9). Moreover, the Bank asserts that it could not have owed Thomas and Cynthia a fiduciary duty when they were engaged in a lawsuit against them. *Id.* at 12-13. As for Scott's claim, the Bank contends that he is an unrelated third party whose claims rely on a relationship to which he was not privy. *Id.* at 14-15.

Plaintiffs respond that the allegations in the Amended Complaint extend beyond that of a traditional lender-borrower relationship and that whether a fiduciary relationship exists between the Bank and Plaintiffs is an issue of fact. (Doc. No. 26, at 9). Specifically, Thomas and Cynthia

point to their longstanding relationship with the Bank and Bradley's repeated assurances that "settlement was achieved, that she had the authority to [settle the case], that documents were coming, and that a settlement was 'a done deal.'" (Doc. No. 19, at ¶¶ 137-441). The Amended Complaint also alleges that Bradley stated on multiple occasions that she was their "advocate," she advised them not to retain counsel, she reviewed their financial documents, and she gave them personal financial advice (such as advising Thomas not to file bankruptcy and to borrow money from relatives). Regarding the relationship between Scott and the Bank, Plaintiffs state "it is apparent that the Bank's instructions and representations were directed toward the allocation of Scott Carlton's resources to the benefit of the Bank's financial position." (Doc. No. 26, at 14). They argue this is sufficient to create a fiduciary relationship between the Bank and Scott.

The Court finds that the facts alleged in the Amended Complaint do not plausibly allege that a fiduciary relationship or duty, as defined under North Carolina law, existed between the Bank and Plaintiffs. The Bank, as a lender, did not owe a fiduciary duty to Thomas or Cynthia, as their borrowers. The fact that Bradley told Thomas and Cynthia that she was their advocate within the Bank does not create a fiduciary relationship. A car salesman, for example, may tell a customer that he is working to get the best price available and is "advocating" on his customer's behalf with the management of the car dealership, but plainly no fiduciary duty arises in such circumstances. Here, Plaintiffs allege that they knew Bradley was an employee of the Bank—her statements that she was their "advocate" to achieve a good settlement are no different than the car salesman's statement to his customers that he will get them a good price. Although Bradley was an attorney, Plaintiffs allege they did not know this during their conversations with her. Further, Thomas and Cynthia allege that they considered getting their own attorney, but did not follow through when

9

Bradley allegedly discouraged it. However, even their consideration of hiring an attorney shows that they did not view Bradley as their legal advisor.

Plaintiffs also cannot establish a fiduciary relationship when they were legal adversaries to the Bank at the same time they allege the existence of a fiduciary relationship. *See Staton v. Brame*, 2001 N.C.B.C. 5 (N.C. Super. Ct. 2001) (holding "fiduciary relationships end when parties become adversaries"); *Searcy v. Searcy*, 715 S.E.2d 853, 857 (N.C. Ct. App. 2011) (stating that the fiduciary duty between husband and wife ended when they became legal adversaries in their divorce); *Lancaster v. Lancaster*, 530 S.E.2d 82, 85-86 (N.C. Ct. App. 2000). In sum, the Court refuses to find the existence of a fiduciary relationship based on the allegation that a business, like the Bank, sought to resolve an ongoing legal dispute in a cooperative and efficient way by appointing an employee to discuss potential resolution with a customer.

Regarding the relationship between Scott and the Bank, Plaintiffs state "it is apparent that the Bank's instructions and representations were directed toward the allocation of Scott Carlton's resources to the benefit of the Bank's financial position." (Doc. No. 26, at 14). They argue this is sufficient to create a fiduciary duty on behalf of the Bank toward Scott. The allegations in the Amended Complaint, however, show only that Scott had a good relationship with the Bank and that he trusted those he personally knew at the Bank. Scott was not a party to the initial loan, the collection action, or to the alleged October settlement discussion with Bradley. While Scott may have had a longstanding consumer and personal relationship with the Bank, this falls far short of creating any fiduciary duty owed by the Bank. Accordingly, the Court will grant the Bank's motion to dismiss as to the Plaintiffs' claims for breach of fiduciary duty (claims 1 and 6) and constructive fraud (claims 2 and 7).

### B. Unfair and Deceptive Trade Practices Act Claims

Plaintiffs' allege that the Bank's actions amount to unfair and deceptive trade practices under North Carolina General Statute Section 75-1.1 (claims 3 and 10). "In order to establish a *prima facie* claim for unfair and deceptive trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001); *see also* N.C. Gen. Stat. § 75-1.1(a). A trade practice is unfair if "it offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." *Wachovia Bank & Trust Co., N.A. v. Carrington Devel. Assoc.*, 459 S.E.2d 17, 21 (N.C. Ct. App. 1995).

"Commerce" includes all business activities. N.C. Gen. Stat. § 75-1.1(b). In other words, the alleged violations of the act must "have an impact on the marketplace." *Barchiese v. Charlotte Sch. of Law, LLC*, No. 3:16-CV-00861, 2017 WL 3573823, at *15 (W.D.N.C. Aug. 17, 2017). "[W]hile the statutory definition of commerce crosses expansive parameters, it is not intended to apply to all wrongs in a business setting." *Barchiese*, 2017 WL 3573823, at *15. An action to enforce a loan after default is based on contractual rights and judicial remedies and, as such, does not establish conduct "in commerce" that is covered by the statute. *See In re Winter*, No. 14-07455-5-DMW, 2015 WL 5063953, at *3 (Bankr. E.D.N.C. Aug. 26, 2015) (filing a proof of claim does not affect commerce); *Wachovia Bank & Trust Co. v. Carrington Dev. Assocs.*, 459 S.E.2d 17, 21 (N.C. Ct. App. 1995) (finding no unfair trade practice where "Wachovia simply exercised its right under the loan agreement to withhold funds").

The Bank asserts that its actions were not "in or affecting commerce" because it was simply exercising its judicial remedies and collecting on the default judgment. (Doc. No. 23, at 16).

11

Additionally, the Bank argues that its actions were taken pursuant to its contractual rights under the ACE loan. *Id.* As to Scott's claim, the Bank contends that he has failed to show that he was proximately injured by any of the Bank's actions. *Id.*

Plaintiffs respond that "Bradley as agent of the Bank repeatedly and consistently made claims that she was Thomas Carlton's advocate with the Bank, provided advice to Thomas Carlton in order for him to resolve claims with his other creditors and acted in various ways to assure Thomas Carlton to trust her." (Doc. No. 26, at 16). Plaintiffs assert that Bradley took advantage of her influence on the Carltons and "[a]t all times relevant to Scott Carlton's provision of money," she repeatedly "assured Thomas Carlton, knowing that he would provide that information to his brother and understanding he would rely on that information in his decision to provide money to Thomas Carlton." *Id.* at 16-17.

The Court finds that Plaintiffs have failed to plausibly allege a claim under section 75-1.1. As alleged, the challenged actions are not "in or affecting commerce." The statute does not prohibit the Bank from exercising its contractual rights under the ACE loan or its rights related to the default judgment. In effect, Plaintiffs allege that the Bank has engaged in unfair debt collection practices. However, if the alleged abusive conduct for an unfair and deceptive trade practices claim pertains only to debt collection, the North Carolina Debt Collection Act (NCDCA) "provides a claimant's exclusive remedy." *DIRECTV, Inc. v. Cephas*, 294 F. Supp. 2d 760, 765-66 (M.D.N.C. Dec. 2, 2003); *see also* N.C.G.S. § 75-51 to 75-54 (listing the specific claims that can be brought by a claimant for unfair debt collection actions). Plaintiffs do not bring an action under the NCDCA, nor would such a claim survive because they are not a "consumer" as defined by the statute. N.C.G.S. § 75-50(1) ("'Consumer' means any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes."). Thus, Plaintiffs cannot

12

maintain a section 75-1.1 claim based on the allegations of unfair debt collection practices. Further, to the extent Plaintiffs argue that the Bank committed an unfair trade practice in connection with the parties' settlement discussions, the Court does not find that those settlement discussions are "in or affecting commerce." Thus, the Court will dismiss Plaintiffs' unfair and deceptive trade practices claims (claims 3 and 10).

### C. Unjust Enrichment/Constructive Trust Claims

Plaintiffs also assert claims for unjust enrichment and constructive trust (claims 4 and 11). To show unjust enrichment, a plaintiff must establish that (1) the plaintiff conferred a benefit on the other party, (2) the benefit was not conferred officiously, (3) the benefit was not gratuitous, (4) the benefit was measurable, and (5) the defendant consciously accepted the benefit. *JP Morgan Chase Bank, Nat'l Ass'n v. Browning*, 750 S.E.2d 555, 559 (N.C. Ct. App. 2013). "In order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 547 S.E.2d 248, 266 (N.C. Ct. App. 2000). "A claim for unjust enrichment 'is neither in tort nor contract but is described as a claim in quasi contract or a contract implied at law.'" *Krawiec v. Manly*, 811 S.E.2d 542, 552 (N.C. 2018) (quoting *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988)).

The Bank argues that Plaintiffs' unjust enrichment and constructive trust claims fail because the Plaintiffs' never conferred a measurable benefit on the Bank, nor did the Bank consciously accept any alleged benefit conferred to it by the Plaintiffs. It contends that Scott never paid anything to the Bank directly at any time; rather, any amount he paid went towards loans he made to Thomas and Cynthia or to payoff other secured creditors. (Doc. No. 23, at 17).

13

Thomas and Cynthia allege that they "conferred benefits in the payment of payments, fees and various other benefits upon Defendant CommunityOne by virtue of their having been advised by Defendant CommunityOne that a settlement for $50,000.00 had been reached with Defendant CommunityOne." (Doc. No. 19, at ¶ 175). Taking these allegations as true, Thomas and Cynthia have sufficiently pled a claim for unjust enrichment.

Plaintiffs also assert that paying off senior lenders on the Beeka properties and placing the Bank in a priority position to collect proceeds from the sale of the properties or execute on its liens against the properties is a measurable benefit. Plaintiffs concede that the Bank has not collected on the property yet, but Plaintiffs assert that the Bank "engineered" their priority status and hope "that this claim will be dismissed so that it can move forward with collecting on its benefit." (Doc. No. 26, at 17).

As discussed below, the Court finds that Scott cannot maintain an unjust enrichment claim based on the alleged circumstances. However, construing all inferences in Plaintiffs' favor, Thomas and Cynthia allege that as a result of the Bank's promises, they sold a portion of the Beeka business to Scott in return for the payment of creditors, which resulted in the Bank obtaining an improved security position with respect to their property. Accordingly, particularly in light of the Court's ruling that their unjust enrichment claim will proceed for other reasons, the Court will defer ruling on this position of Thomas and Cynthia's unjust enrichment claim until later in the proceedings.

The Court does not find, however, that Scott has plausibly stated an unjust enrichment claim against the Bank. Scott was not a party to the October 2012 discussion, the default judgment, or the subsequent conversations with Bradley. Scott never alleges that he paid any money directly to the Bank or paid the lenders at the Bank's direct request to him. He merely "overheard" or heard

14

from Thomas that the Bank was advising Thomas to borrow money from family members. Indeed, Scott never intended to confer any benefit to the Bank. Rather, Scott paid off the senior lenders on the Beeka properties to benefit his brother, and by doing so he only "inadvertently" secured the Bank's position as senior lender. (Doc. No. 19, at ¶ 73). Thus, the Court will not hold that a "contract implied by law" arises between Scott and the Bank to create a claim for unjust enrichment when Scott admittedly never intended to benefit the Bank in the first place. Accordingly, the Court will grant the Bank's motion to dismiss as to Scott's unjust enrichment claim (claim 4).

### D. Breach of Contract and the Covenant of Good Faith and Fair Dealing

Thomas and Cynthia allege breach of contract and breach of the covenant of good faith and fair dealing against the Bank arising from the alleged oral agreement to settle the ACE loan (claim 5). "To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and the damages resulted from such breach." *Claggett v. Wake Forest Univ.*, 486 S.E.2d 443, 446 (1997). Inherent in every contract is the implied covenant of good faith and fair dealing, which implies that "'neither party will do anything which injures the right of the other to receive the benefits of the agreement.'" *Michael Borovsky Goldsmith LLC v. Jewelers Mutual Ins. Co.*, 359 F. Supp. 3d 306, 313 (E.D.N.C. 2019) (quoting *Robinson v. Deutsche Bank Nat'l Tr. Co.*, No. 5:12-CV-590-F, 2013 WL 1452933, at *11 (E.D.N.C. Apr. 9, 2013)). Generally, when a court rejects a breach of contract claim, it likewise rejects any claim for breach of the covenant of good faith and fair dealing contained in the contract. *Id.*

A claim for breach of contract or any claim arising from a contractual breach is subject to a three year statute of limitations period. N.C. Gen. Stat. § 1-52(1). A breach of contract claim accrues upon the date of the breach, regardless of whether the injured party has knowledge that

15

the breach occurred. *Mountain Land Properties, Inc. v. Lovell*, 46 F. Supp. 3d 609, 626 (W.D.N.C. 2014).

The Bank argues that Plaintiffs' contract claim is barred for three reasons: (1) the absence of a written agreement shows that the parties did not intend to be bound by the agreement; (2) because Plaintiffs do not allege ever making or attempting to make any settlement payments to the Bank, they have failed to allege the existence of any legal obligation that the Bank could have possibly breached; and (3) Plaintiffs' claims are barred by the three year statute of limitations.

The Court need not reach the Bank's first two arguments because it finds that Plaintiffs' claim for breach of contract and the covenant of good faith and fair dealing is barred by the statute of limitations. The alleged oral contract occurred on October 24, 2012 when the parties agreed to settle the claims. The Bank argues that, at the latest, the statute of limitations period began to run when the Bank obtained a default judgment against Thomas and Cynthia on October 29, 2012. Plaintiffs argue that the statute of limitations did not begin to run until 2014 when Thomas and Cynthia were led by the Bank to borrow money from Scott because it was not until that time that they realized the Bank was not going to honor the settlement agreement. However, if the parties created an enforceable oral contract at the October 24, 2012 meeting that they would enter into a settlement agreement in the state action, then Thomas and Cynthia's claim for breach of that agreement arose, at the latest, when the Bank ignored the alleged contract and obtained default judgment against Plaintiffs. This was a clear breach of the alleged agreement to settle. Plaintiffs did not file this action until March 7, 2016,[2] more than three years after the default judgment.

---

[2] Plaintiffs filed a suit against the Bank on March 7, 2016 seeking money damages and injunctive relief enjoining the Bank from proceeding against the properties owned by Beeka. Plaintiffs voluntarily dismissed this complaint and re-filed their lawsuit, stating different causes of action, in Iredell County Superior Court on April 20, 2018. The Bank removed the April Complaint to this Court in May 2018. (Doc. No. 8, at 4).

Plaintiffs' allegation that they did not "realize" the Bank was not going to honor the settlement agreement until later is not enough to toll the statute of limitations for a breach of contract claim. Accordingly, Thomas and Cynthia's claim for breach of contract and the covenant of good faith and fair dealing is barred by the statute of limitations.

   E. **Fraud in the Inducement/Affirmative Misrepresentation & Negligent Misrepresentation**

Thomas and Cynthia assert claims of affirmative misrepresentation and negligent misrepresentation (claim 9) as well as fraud in the inducement (claim 8). Claims sounding in fraud are subject to a heightened pleading standard in Rule 9(b), which requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The alleged "circumstances" which must be pled with particularity include the "who, what, where, when, why, and how" of the fraud. *Rohlik v. I-Flow Corp.*, No. 7:10-CV-173-FL, 2011 WL 2669302, at *3 (E.D.N.C. July 7, 2011). These heightened requirements apply equally to a claim for negligent misrepresentation. *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 727 (M.D.N.C. 2015) ("Federal courts have repeatedly found that the North Carolina tort of negligent misrepresentation sounds in fraud and have applied Rule 9(b)[.]").

The essential elements of fraud or fraud in the inducement are "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 418 S.E.2d 648, 658 (1992). "As a general rule a mere promissory representation will not be sufficient to support an action for fraud. A promissory misrepresentation may constitute actionable fraud when it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." *Leftwich v. Gaines*, 521 S.E.2d 717, 723 (N.C. Ct. App. 1999); *see also Olympus Managed Health Care, Inc. v. Am.*

*Housecall Physicians, Inc.*, 662 F. Supp. 2d 427, 438 (W.D.N.C. 2009) (holding that plaintiff stated a claim for fraud when defendants made multiple representations that a merger would be consummated, but plaintiff alleged that the defendants never intended to complete the merger and made statements regarding the completion of the merger in order to induce plaintiff to disclose confidential information). "The fraudulent nature of such statements may be proved by circumstantial evidence." *Leftwich*, 521 S.E.2d at 723.

The Bank asserts that Plaintiffs have not met the heightened pleading requirement because Thomas and Cynthia failed to allege "what was obtained as a result of the fraud." (Doc. No. 23, at 20). In addition, the Bank argues that Plaintiffs cannot show that their reliance on the Bank's statements after the initiation of the lawsuit was justified, and, therefore, their fraud-based claims should be dismissed. *See Helms v. Holland*, 478 S.E.2d 513, 517 (N.C. Ct. App. 1996) ("Justifiable reliance is an essential element of both fraud and negligent misrepresentation."). The Court disagrees.

Plaintiffs have alleged the time, place, and contents of the false representations, as well as the identity of the person making the representation. They have alleged that the Bank obtained a default judgment through its assurances that settlement was forthcoming and telling Thomas and his partners to forego defense of the collection action, even though the Bank allegedly knew that it was not going to settle. Relying on Bradley's advice, Plaintiffs did not file bankruptcy (potentially discharging the Bank's loan) and engaged in transactions with their brother that led to payments to other senior creditors, thereby making the Bank the senior creditor and priority lender. Plaintiffs state that Bradley's representations about her authority to settle and continued assurances that settlement paperwork was forthcoming, were calculated to induce Thomas and Cynthia "to sit on [their] rights" and to ensure "that a greater portion of [their] assets would be available for

collection by CommunityOne." (Doc. No. 19, at ¶ 160). Thus, Plaintiffs have met the heightened pleading requirements under Rule 9(b) and alleged the who, what, when, where, and how of the fraud.

Furthermore, while the Bank was in an adversarial position with Thomas and Cynthia, whether they, in fact, justifiably relied on the Bank's statements is an issue better decided on a motion for summary judgment or by a jury. Accordingly, the Bank's motion to dismiss Thomas and Cynthia's claims for fraud in the inducement/affirmative misrepresentation and negligent misrepresentation will be denied.

## V. ORDER

**IT IS THEREFORE ORDERED** that:

1. Defendant's Motion to Dismiss, (Doc. No. 22), is **GRANTED IN PART** and **DENIED IN PART.** Plaintiffs' claims for breach of fiduciary duty (claims 1 and 6), constructive fraud (claims 2 and 7), unfair and deceptive trade practices (claims 3 and 10), unjust enrichment (claim 4), and breach of contract claim (claim 5) are **DISMISSED;** and

2. This case shall **proceed to discovery and further proceedings on the merits of the remaining claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED.**

Signed: March 12, 2020

Kenneth D. Bell
United States District Judge